## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CARLOS HERNANDEZ**                                    **CIVIL ACTION**

**VERSUS**                                              **NO.  14-1763**

**N. BURL CAIN, WARDEN LSP**                            **SECTION "C"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See U.S.C. § 2254(e)(2) (2006).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Carlos Hernandez, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 27, 2008, Hernandez

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

was  charged by bill of indictment with aggravated rape of a juvenile.[3]  The Louisiana

Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial in

relevant part as follows:[4]

**K.A.**

The victim, K.A., was 13 years old at the time of trial. He testified that when he was 11 years old, he took a trip with his biological father. When K.A. returned, he learned that neighbors had called the police claiming that the defendant, his stepfather, had touched their children inappropriately. K.A. then told his mother, F.A., that the defendant had raped him once when he was five or six years old. During that incident, the defendant told K.A. to take off his clothes and get on the bed. Afterward, the defendant took off his clothes and "stuck his penis" in K.A.'s "butt."

K.A. believed this incident occurred when he was five or six years old, because he recalled at the time that he rode the bus to school with "little people," and that he was a "little person" at that time. He did not tell anyone what happened at that time because he was afraid and he thought the defendant would hurt his mother. The defendant also told K.A. not to tell anyone and that he would get in trouble if he told.

At some point prior to trial, K.A. admitted to an employee of the district attorney's office, James Thomas, that the defendant had raped him "a number of times," and that he had waited a long time to make those additional allegations because he was embarrassed. K.A. testified that the incidents occurred between the ages of seven to eleven, in their apartment on Holmes Boulevard and at their residence on Helen Street.

K.A. then recalled an incident when they lived on Helen Street. At that time, K.A.'s mother left the house, and the defendant told K.A. to take off his clothes and lie on the sofa. Afterward, the defendant took off his clothes and then "stuck his penis" in K.A.'s "butt." When the defendant was finished, the defendant removed his penis and went to wash it. K.A. recalled that when he was in first and second grade, his mother worked

---

[3]St. Rec. Vol. 1 of 6, Bill of Indictment, 3/27/08 (as amended 3/8/10).

[4]The facts are divided into sections for the separate incidents with different victims.  The names of the victims, child witnesses, and victims' family members are replaced with their initials in order to protect their privacy pursuant to La. R.S. 46:1844(W)(3).

outside the home, and that when she was away, the defendant would take care of him. F.A. (K.A.'s mother) and W.A. (K.A.'s brother) also recalled that the defendant took care of K.A. when F.A. was not home.

On January 6, 2008, Deputy Donald Cannatella of the Jefferson Parish Sheriff's Office was dispatched to Helen Street in response to a complaint of aggravated rape. At that time, Deputy Cannatella met with F.A. and K.A., and he learned from K.A. that the defendant had put his penis in K.A.'s "butt" five years prior. Deputy Cannatella notified his supervisor and the detective bureau and turned over the investigation to Detective Balser. Detective Balser, in turn, contacted Detective Kay Horne after learning that Detective Horne had investigated other incidents involving the defendant. F.A., K.A., and W.A. subsequently went to the detective bureau and met with Detective Horne. At that time, Detective Horne learned from K.A. that the defendant stuck his "private up [K.A.'s] butt" one time.

Afterward, K.A. was referred to the Children's Advocacy Center, where he was interviewed by Erika Dupepe on January 17, 2008, regarding the allegations against the defendant. That interview was recorded and shown to the jury. Following that interview, K.A. was examined on January 28, 2008, by Dr. Jameka Head at Children's Hospital. At that time, K.A. complained of one instance of penile-anal contact by his stepfather, the defendant, six or seven years prior, and said that his stepfather had told him not to tell anybody.

Dr. Adrienne Atzemis, Dr. Head's supervisor, testified that K.A.'s examination was overall within normal limits except he had redness around his bottom that was nonspecific for abuse. She further testified that the lack of findings was not a problem. Dr. Atzemis explained that the anus can stretch to the point of injury, but that it can heal very quickly with no scarring. She also explained that children commonly do not disclose sexual abuse immediately for many reasons, including not knowing it is wrong, embarrassment, fear, feeling responsible for it, protecting family members, threats, and positive reinforcements. Lastly, Dr. Atzemis testified that disclosure commonly starts with one incident and later includes others.

The State also presented evidence that the defendant committed other crimes of a sexual nature involving L.P., J.W., and J.A.

**L.P. and J.W.**

L.P. and J.W., who were nine years old at the time of trial, used to go to the defendant's house to eat dinner and to get money from the

defendant to spend on candy. On the night before Christmas, when L.P. was seven years old, she went to the defendant's house. While she was there, the defendant put his hands in her panties and "wiggled around" with his finger. Shortly thereafter, J.W. went to the defendant's house to get L.P. When she arrived, L.P. was sitting on the defendant's lap. After J.W. told L.P. that her father was looking for her, the defendant pulled J.W. on his lap and then touched her inside her pants on her "private part" where she "goes to the bathroom," and moved his hand around. L.P. and J.W. then went and told their mothers, who called the police. When J.W.'s mother confronted the defendant immediately after the incident, the defendant repeatedly said the girls were no longer allowed at his house.

L.P. and J.W. later spoke to the police, and they were interviewed by Erika Dupepe of the Children's Advocacy Center on January 7, 2008. Those interviews were videotaped and shown to the jury. L.P. and J.W. were also examined at Children's Hospital by Dr. Atzemis on January 11, 2008, and Dr. Atzemis testified that there were no abnormal findings and no expectations of any. It is noted that when Detective Horne (who was in plain clothes) and Deputy Howard (who was in uniform) went to the defendant's house to speak to him about the allegations involving L.P. and J.W., before Detective Horne could introduce herself, the defendant blurted out, "I didn't touch those babies, I love babies."

## J.A.

J.A., who was ten years old at the time of trial, testified that the defendant used to live with her grandmother, F.A., and that K.A. was her uncle. When she was seven or eight years old, she went to visit her grandmother. While J.A. was in K.A.'s room watching K.A. play video games, the defendant came in, sat down, and told her to sit on his lap. After she did so, the defendant stuck his hand inside of her panties and touched her on her "private part" "where she goes to the bathroom."

A couple of days later, J.A. told her mother what happened. J.A. later spoke to the police and was interviewed by Erika Dupepe at the Children's Advocacy Center on January 11, 2008. That interview was videotaped and shown to the jury. J.A. was also examined at Children's Hospital by Dr. Head on January 30, 2008. Dr. Atzemis testified that Dr. Head's examination revealed no abnormalities, which she did not find unusual.[5]

---

[5]State v. Hernandez, 93 So. 3d 615, 618-20 (La. App. 5th Cir. 2012); St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 11-KA-712, pp. 3-7, 4/10/12.

Hernandez was tried before a jury on June 2, 3 and 4, 2010, and found guilty as charged.[6] The state trial court sentenced Hernandez to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[7]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Hernandez's appointed counsel asserted four errors:  (1) It was error to admit other crimes evidence detailing alleged sexual abuse against J.W., L.P., and J.A. as that evidence was overwhelmingly prejudicial and probative of nothing at issue at trial.  (2) The trial court repeatedly admitted into evidence wholly inadmissible and extremely prejudicial hearsay despite the objections of trial counsel.  (3) It was error to admit to the jury the statement made by K.A. to an investigator for the District Attorney's office, two years post-indictment and in preparation for trial, under the guise of the "first report" exception to the bar against hearsay.  (4) It was error to prohibit the defense from cross examining J.A. regarding other complaints that she had made of alleged sexually assaultive behavior and this unconstitutionally restricted appellant's ability to confront his accuser.[8]

---

[6]St. Rec. Vol. 2 of 6, Trial Minutes, 6/2/10; Trial Minutes, 6/3/10; Trial Minutes 6/4/10; Jury Verdict, 6/4/10; St. Rec. Vol. 3 of 6, Trial Transcript, 6/2/10; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 6/2/10; Trial Transcript, 6/3/10; State Vol. 5 of 6, Trial Transcript (continued), 6/3/10; Trial Transcript, 6/4/10.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 6/17/10; St. Rec. Vol. 2 of 6, Sentencing Transcript, 6/17/10.

[8]St. Rec. Vol. 5 of 6, Appeal Brief, 11-KA-0712, 8/19/11.

The Louisiana Fifth Circuit Court of Appeal affirmed the conviction on April 10, 2012, finding the claims meritless.[9]  The Louisiana Supreme Court denied Hernandez's subsequent writ application without stated reasons on September 28, 2012.[10]  His conviction and sentence became final ninety (90) days later, on December 27, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United states Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(a)(A)), cert denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On December 28, 2012, Hernandez submitted an application to the state trial court for post-conviction relief and a request for a free copy of his trial record, asserting "particularized relief" on the following grounds for relief:  (1) Trial counsel was ineffective in failing to assert that the State was required to prove beyond a reasonable doubt that Hernandez had the specific intent to rape the victim.  (2) Trial counsel was ineffective in failing to object during jury selection that the State must give a race-neutral reason for excluding black jurors.  (3) Trial counsel was ineffective in faling to object and subpoena other witnesses to establish Hernandez's alibi and that he was not the

---

[9]Hernandez, 93 So. 3d at 620-28.  The Fifth Circuit did find one patent error, namely that the trial court record did not notify Hernandez of the sex offender registration requirements for his conviction of aggravated rape.  Id. at 629.  The Fifth Circuit therefore remanded this matter, instructing the district court to notify Hernandez of the requirements.  Id.  Because this issue does not affect Hernandez's federal habeas petition, it is not addressed further herein.

[10]State ex rel. Hernandez v. State, 98 So. 3d 834 (La. 2012); St. Rec. Vol. 1 of 6, La. S. Ct. Order, 2012-KH-1142, 9/28/12; St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 12-KH-1142, 5/7/12.

person who committed this crime.  (4)  Other errors that Hernandez cannot recall without a copy of the record.[11]

The state trial court did not immediately rule on Hernandez's application, so on April 30, 2013, he applied for a writ from the Fifth Circuit Court of Appeal to direct the district court to rule on the merits of his post-conviction relief application and document request.[12]  On May 29, 2013, the Fifth Circuit granted the writ, ordering the district court to rule on the matter within twenty (20) days.[13]  On the very next day, May 30, 2013, the district court issued an order with reasons denying both Hernandez's application for post-conviction relief and his request for documents.[14]  The state district court found that Hernandez had failed to demonstrate particularized need for the documents, noting that "[p]articularized need is more than a mere statement that he wishes to comb the record for errors or a general statement that a right has been violated."  The court found that Hernandez had not submitted his claims with particularity and that they were "speculative, conclusory, and lack[ed] any factual basis or specificity."  Thus, he was not entitled to a free copy of the record, nor to post-conviction relief.

---

[11]St. Rec. Vol. 1 of 6, Application for Post Conviction Relief, 12/28/12.

[12]St. Rec. Vol. 6 of 6, Application for Writ of Mandamus and Alternative Writ, 4/30/13.

[13] St. Rec. Vol. 1 of 6, 5th Cir. Order, 13-KH-372, 5/29/13.

[14]St. Rec. Vol. 1 of 6, Trial Court Order, 5/30/13.

The Louisiana Fifth Circuit denied Hernandez's subsequent writ application in its reasoned opinion issued July 22, 2013, finding no error in the district court's denial.[15] The Fifth Circuit also addressed Hernandez's apparent misunderstanding that the writ it had previously granted, ordering the district court to rule on his application, did not order the district court to grant the application. Thus, it rejected Hernandez's argument that the district court had failed to comply with the Fifth Circuit's order. The Louisiana Supreme Court denied Hernandez's related writ application without stated reasons on April 4, 2014.[16]

## II.   FEDERAL HABEAS PETITION

On July 31, 2014, the clerk of this court filed Hernandez's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[17] (1) denial of effective assistance of counsel; (2) denial of the right to an effective appeal; (3) violation of his equal protection and due process rights when the state trial court allowed the State to introduce other crimes evidence; (4) the trial court erred by admitting hearsay evidence; (5) trial court error in permitting the jury to hear the victim's prior statement

---

[15]St. Rec. Vol. 1 of 6, 5th Cir. Order, 13-KH-555, 7/22/13; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application,13-KH-555, 7/1/13.

[16]St. Rec. Vol. 1 of 6, La. S. Ct. Order, 13-KH-2073, 4/4/14; St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 13-KH-2073, 8/14/13.

[17]As the State notes in its response, Hernandez's claims are not entirely clear – lists three collateral review claims in his application and seems to raise his direct appeal claims in the attached memorandum. This court therefore construes his application as asserting seven claims.

to an investigator for the district attorney's office; (6) trial court error in limiting cross-examination of one witness; (7) trial counsel's errors which Hernandez cannot recall without a copy of the record.[18]

In its response in opposition to Hernandez's petition, the State concedes the timely filing of the petition, but submits that some claims are subject to procedural default due to lack of exhaustion.[19]   The State further submits that even if those claims are not defaulted, they also lack merit.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.   Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481

---

[18]Rec. Doc. No. 1.

[19]Rec. Doc. No. 14.

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

(1997)).  The AEDPA therefore applies to Hernandez's petition, which, for reasons discussed below, is deemed filed in this court on July 21, 2014.[21]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that the petition was timely filed.  However, the State argues that four of the claims are procedurally defaulted for lack of exhaustion.  The State also argues that even if those claims are not procedurally defaulted, they lack merit, as do the rest of the claims.  Contrary to the State's argument, I find that all of the claims have been fully exhausted.

The State also argues that the claims originally brought on direct review are strictly state law claims that Hernandez is attempting to reclassify as federal law claims.  To the extent those claims rely exclusively on state law, they cannot establish federal

---

[21]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Hernandez's petition was filed by the clerk of this court on July 31, 2014.  His signature on the petition is dated July 21, 2014, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing.

constitutional violations sufficient to warrant habeas corpus relief.  See Swarthout v. Cooke, ——— U.S. ———, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law).  However, it is clear from Hernandez's original appellate brief that he asserted these claims not only as matters of state law, but also as constitutional violations.[22]  Thus, all of Hernandez's claims will be evaluated on the merits.

IV.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state

---

[22]See St. Rec. Vol. 5 of 6, Appeal Brief, 11-KA-0712, 8/19/11.

court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280–81 (5th Cir. 2000), cert. denied, 531 U.S. 849, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405–06, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Penry v. Johnson, 532 U.S. 782, 792–93, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set

12

of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, ––– U.S. ––––, 134 S.Ct. 1697, 1706–07, 188 L.Ed.2d 698 (2014) (citing Harrington v. Richter, 562 U.S. 86, ––––, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  White, 134 S.Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S.

at 641 (quoting <u>Woodford</u>, 537 U.S. at 24–25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.   **DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL AND TRIAL COURT RECORD (CLAIMS NOS.(1),(7))**

Hernandez alleges that he was denied effective assistance of counsel because his lawyer: (1) failed to object that the State was required to prove beyond a reasonable doubt that he had specific intent; (2) proceeded in voir dire without requiring the State to give race neutral reasons for exclusion of black jurors; (3) failed to subpoena other witnesses to establish his alibi; and (4) failed to object to introduction of other crimes evidence.  He also contends, as he did in his state post-conviction relief petition, that his counsel made other errors that he cannot recall without seeing a copy of the trial record.

The state district court found that Hernandez had not showed particularized need for a complete copy of the transcripts free of charge.  The state district court concluded:

> [Hernandez's] claims are speculative, conclusory, and lack any factual basis or specificity.  [Hernandez] does not include any examples of counsel's ineffective performance, but rather submits a general summary, which appears to be merely an attempt to gain a free copy of the transcripts and court record. . . .  Petitioner does not submit a claim with any particularity. He fails to prove any deficiency in counsel's performance.  On the showing made, petitioner is not entitled to relief.[23]

_____

[23]St. Rec. Vol. 1 of 6, Trial Court Order, 5/30/13.

The Louisiana Fifth Circuit denied his related writ application, finding no error in the district court's decision.[24]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir.2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 688 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Id., 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 466 U.S. at 687–88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., 466 U.S. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

---

[24]St. Rec. Vol. 1 of 6, 5th Cir. Order, 13-KH-555, 7/22/13; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application,13-KH-555, 7/1/13.

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' ... But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.' " (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S.Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

16

Harrington, 131 S.Ct. at 788. Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential." Cullen v. Pinholster, ––– U.S. –––, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Id., 466 U.S. at 689; Neal, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th Cir. 2000), cert. denied, 531 U.S. 1167, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013, 120 S.Ct. 522, 145 L.Ed.2d 401 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983–84 (5th Cir. 1994)).

17

As the state district court noted, Hernandez's ineffective assistance claims are both conclusory and speculative.  First, Hernandez argues that trial counsel violated his rights when she failed to object that the State was required to prove beyond a reasonable doubt that he had the specific intent to rape the victim.  This claim, though conclusorily stated in his petition and supporting memorandum, is not supported or explained in any way.  In addition, this claim is not cognizable, because the crime with which Hernandez was charged – aggravated rape – does not require specific intent.  La. Rev. Stat. 14:42; State v. Kennedy, 803 So. 2d 916, 923 (La. 2001).  Thus, trial counsel's alleged "failure to object," however unclearly asserted by Hernandez, could not constitute ineffective assistance of counsel.

Hernandez's second basis for an ineffective assistance of counsel claim is also unsubstantiated and unsupported by the record.  In this claim, he asserts that trial counsel failed to challenge juror selection by the State on grounds that it failed to give race neutral reasons for excluding black jurors.  However, as the State's response accurately points out, there is no evidence that African-American jurors were subject to peremptory challenges, nor that any peremptory challenges were exercised based on race.  Defense counsel employed far more peremptory challenges than the State, eleven compared to the State's four.[25]  Hernandez has not met his burden for obtaining relief on this claim.

------

[25]St. Rec. Vol.2 of 6, Jury Selection Minute Entry, 6/1/10.

Third, Hernandez vaguely references trial counsel's failure to subpoena other witnesses who could have established his alibi.  As the state district court noted, Hernandez "does not present any evidence or affidavits of possible alibi witnesses, or even list who might have been subpoenaed."[26]  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").  In the instant case, Hernandez presented no evidence in the state court proceedings – such as names of the alleged witnesses or affidavits regarding their testimony – demonstrating

---

[26]St. Rec. Vol. 1 of 6, Trial Court Order, 5/30/13.

how they would have testified in a manner beneficial to the defense. Thus, he has clearly not met his burden on this claim.

Fourth, Hernandez argues that his trial counsel failed to make a "contemporaneous objection" to the State's introduction of other crimes evidence. That assertion is contradicted by the record. In fact, the main issue addressed before Hernandez's trial was whether his other sexual offenses against juvenile victims would be admissible.[27] Hernandez's trial counsel argued vigorously against the admission of such evidence at a hearing before the state trial court on September 10, 2009.[28] After the hearing, which included testimony of witnesses and oral arguments by counsel, the court ruled that under Louisiana Code of Evidence Article 412.2, the evidence was admissible to show that Hernandez had a "lustful disposition towards children" and was otherwise admissible to show motive and opportunity. The court also found that it could provide limiting instructions to the jury so that the prejudicial effect would not outweigh the probative value of the evidence. Trial counsel's objection to this ruling was clearly noted on the record. Thus, insofar as Hernandez claims that his trial counsel was ineffective for failure to object to the introduction of other crimes evidence, his claim must fail.

---

[27]St. Rec. Vol. 1 of 6, Notice of Intent to use Evidence of Similar Crimes, 7/7/08; St. Rec. Vol. 3 of 6, Hearing Transcript, 9/10/09.

[28]St. Rec. Vol. 3 of 6, Hearing Transcript, 9/10/09.

Finally, Hernandez asserts that there were other crucial errors committed by counsel, but he needs a free copy of the record to present those claims.  On direct appeal, an indigent criminal has an absolute right to a trial transcript, or an alternative device that fulfills the same function.  Griffin v. Illinois, 351 U.S. 12, 18-20 (1956).  There is no question that the trial transcript was in fact provided to Hernandez's appellate counsel, which Hernandez does not deny.  On collateral review, however, an indigent defendant's right to a trial transcript is not absolute.  Rather, a petitioner must show a need for the transcript.  Smith v. Beto, 472 F.2d 164, 165 (5th Cir. 1973).   A petitioner must also demonstrate that the claims he seeks to raise are not frivolous.  Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam) (citing United States v. MacCollom, 426 U.S. 317 (1976)).

As noted above, the state district court rejected his request, stating that he had failed to show a particularized need for the transcript.[29]  The Louisiana Fifth Circuit affirmed this decision.[30]  Based on the unsubstantiated nature of the ineffective assistance of counsel claims, addressed above, all of which are meritless, vague, and conclusory, Hernandez has not met his burden of showing particularized need for the transcript.  He

[29]St. Rec. Vol. 1 of 6, Trial Court Order, 5/30/13.

[30]St. Rec. Vol. 1 of 6, 5th Cir. Order, 13-KH-555, 7/22/13; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 13-KH-555, 7/1/13.

21

has simply not showed how his claims would be viable if he had access to the "complete" transcript. This claim must also fail.

Hernandez has failed to show that the state court's decision denying his ineffective assistance of counsel claims was contrary to or an unreasonable application of federal law. He is therefore not entitled to habeas relief on these claims.

## VI.   DENIAL OF THE RIGHT TO AN EFFECTIVE APPEAL (CLAIM (2))

Hernandez conclusorily asserts a claim of "denial right of effective appeal" in his federal habeas petition. However, in the supporting memorandum, he provides no particular grounds for this claim. Rather, it appears that this claim rests wholly on the denial of his request for the copy of his trial record on collateral review[31] – which has been discussed above. This court's review of the state court record has revealed no basis for this claim, and it too must fail. Hernandez is not entitled to federal habeas relief on this claim.

## VII.   EVIDENTIARY RULINGS (CLAIMS (3)-(5))

The direct appeal claims Hernandez asserts are based on purported errors by the trial court in its evidentiary rulings. First, he alleges violation of his equal protection and due process rights when the trial court allowed the State to introduce other crimes evidence.

---

[31]The only mention of this claim is in the federal petition itself. See Rec. Doc. No. 1 ("Because defendant was not allow effective collateral review because trial court did not allow defendant with a copy of his trial record."). In the supporting memorandum, this claim is obscured by his other claims, although he does state that he "had a right to obtain those records to proceed effectively with his appeal."Id.

Second, he alleges the trial court erred by admitting hearsay evidence.  Third, he alleges the trial court erred in allowing the jury to hear the victim's prior statement to an investigator for the district attorney's office.  Because these claims implicate the same standard that federal courts use to review state evidentiary rulings, it is appropriate to consider them together.

To the extent Hernandez argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review.  See Swarthout v. Cooke, —— U.S. ——, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).

Thus, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process in such a way that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 214 U.S. 219, 236-37 (1941).  Federal habeas review on such matters is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.  Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991).  In keeping with this principle, the United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally

unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial." <u>Gonzales</u>, 643 F.3d at 430 (quotation omitted).

This issue presents a mixed question of law and fact. <u>Wilkerson v. Cain</u>, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent. Under these rigorous standards, Hernandez has failed to meet his burden regarding the trial court's evidentiary rulings.

Hernandez alleges that the trial court's error in admitting evidence of other crimes created a "trial within a trial" that overwhelmed the evidence regarding the crime for which he was actually convicted. However, the trial court properly applied La. Code Evid. art. 412.2, which the Louisiana Supreme Court has held was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children. <u>State v. Williams</u>, 830 So.2d 984, 986-87 (La. 2002). In <u>State v. Williams</u>, the Louisiana Supreme Court noted that Article 412.2 mirrors Fed. R. Evid. 413, except that the federal rule states that such evidence "is admissible," whereas the Louisiana rule states that it "may be admissible." <u>Id.</u>

Hernandez appears to argue that the trial court failed to weigh the prejudicial effect of the evidence, which he asserts outweighed its probative value. While it is true that evidence admitted under Article 412.2 would be subject to the probative-versus-prejudice balancing test, it cannot be said that the state court's admissibility finding was an

unreasonable application of federal law.  In fact, federal courts have noted that "Rule 413 [the federal equivalent of 412.2] is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." <u>United States v. Enjady</u>, 134 F.2d 1427, 1431 (10th Cir. 1998); <u>United States v. Guidry</u>, 456 F.3d 493, 502–03 (5th Cir. 2006) ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence.") (citing <u>Enjady</u>, 134 F.2d at 1431).

In Hernandez's case, the probative value of the crimes against the other juveniles outweighed the prejudicial effect.  As the state trial court noted, the other evidence could show not only a lustful disposition towards children similar in age to the victim, but also a motive and opportunity, as each victim was either someone related to Hernandez through his marriage, or who lived near him. Furthermore, the court instructed the jury as to the proper use of the evidence, and there is nothing in the record to suggest the jury did not understand and correctly apply the instructions.

Hernandez's next contention is that the trial court repeatedly admitted into evidence wholly inadmissible and extremely prejudicial hearsay despite the objections of trial counsel.  This claim was properly addressed on direct appeal, in which the state appellate court concluded that despite any errors regarding hearsay admissions, these errors were

harmless.[32]  The alleged hearsay evidence referred to by Hernandez is the testimony of the detectives, who at times recounted what some of the victims had said to them.  However, because each victim actually testified at trial as to the sexual abuse they suffered, any possible hearsay was merely cumulative or corroborative of the other evidence.  Thus, the court concluded that there was no harm in this error.

First, there was certainly no constitutional harm in any evidentiary error because an abundance of evidence and first-hand testimony established Hernandez's guilt and conviction.  It was neither contrary to nor an unreasonable application of federal law for the state court to deny relief on this claim.  Because Hernandez cannot show any fundamental fairness as to this alleged error, he is not entitled to federal relief on this claim.

Similarly, in his next claim Hernandez argues that it was error to permit  the jury to hear the statement made by the victim K.A. to an investigator for the district attorney's office, two years post-indictment and in preparation for trial, under the "first report" exception to the bar against hearsay.  This claim refers to the fact that initially the victim, K.A., stated that rape had occurred on only one occasion.  A few years later, he reported that multiple rapes had occurred.  The district court allowed the statement pursuant to La. C.E. art. 801(D)(1)(d) which permits the introduction of statements of initial complaint of sexually assaultive behavior.  Hernandez objects to the later statement, recounted at trial by the investigator, arguing that it was not a "first report," but rather a secondary follow-up

---

[32]State v. Hernandez, 93 So. 3d 615, 618-20 (La. App. 5th Cir. 2012); St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 11-KA-712, pp. 3-7, 4/10/12.

statement.  On appeal, the Louisiana Fifth Circuit found that the second statement reported new crimes, namely the other rapes, and thus it was proper to admit the statement as a first report.[33]  The Louisiana Fifth Circuit also stated that even if the trial court had erroneously admitted the testimony, any error was harmless, as once again it was merely cumulative or corroborative of other testimony – namely, that of the victim, K.A.

Again, in light of the abundance of testimony against Hernandez, and the cumulative nature of the alleged hearsay, there is no basis on which this federal court might disturb this state court evidentiary ruling.  Hernandez has not made a showing of fundamental unfairness, and in all of the above claims, he has failed to demonstrate that the challenged evidence "played a crucial, critical, and highly significant role in the trial." Gonzales, 643 F.3d at 430 (quotation omitted).  Thus, he is not entitled to federal habeas relief on these claims.

## VIII.   CROSS-EXAMINATION (CLAIM (6))

Hernandez claims that his constitutional right to confrontation was violated because the state court did not allow him to cross-examine witness J.A. about her past allegations of sexual abuse.  During trial, the State learned that after testifying about the sexual abuse she was subjected to by Hernandez, J.A. went home and disclosed to her mother that her mother's new husband had also molested her – although the time frame for the newly

---

[33]Id.

27

alleged abuse was after Hernandez was already incarcerated.[34]  The State filed a motion in limine to prevent the defense from cross-examining J.A. about these new allegations, relying on La. Code Evid. art. 412, which bars evidence regarding a victim's past sexual behavior in sexual assault cases.[35]  The trial court granted the motion.[36]

The federal Fifth Circuit has stated that "[t]he Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire."  Kittelson v. Dretke, 426 F.3d 306, 319 (5th Cir. 2005) (quoting Bigby v. Dretke, 402 F.3d 551, 573 (5th Cir. 2005).  Rather, a trial court judge has discretion "to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Id. at 320 (quoting Davis v. Alaska, 415 U.S. 308, 315 94 S.Ct. 1005, 39 L.Ed.2d 347 (1974) (internal quotation marks omitted)).  Courts consider the following factors in determining whether any exclusion of evidence in this way violates a defendant's rights: strength of the prosecution's overall case; importance of the witness's testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the extent of cross-examination otherwise permitted.  Id.

---

[34]St. Rec. Vol. 4 of 6, Trial Transcript, 6/3/10, p. 6-7.

[35]Id. at p. 6-9; St. Rec. Vol. 1 of 6, Motion in Limine, 6/3/10.

[36]St. Rec. Vol. 4 of 6, Trial Transcript, 6/3/10, p. 51.

Before granting relief based on a violation of the Confrontation Clause, the court must apply harmless error analysis.  Id. (citing United States v. Stewart, 93 F.3d 189, 194 (5th Cir. 1996)).  On federal habeas review, the harmless error standard is governed by Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), which prohibits relief unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  There must be "more than a mere reasonable possibility that it contributed to the verdict."  Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996) (citing Brecht 507 U.S. at 637).

In this case, it is clear that there was no constitutional error to this effect.  First, the purpose of the rape shield law codified in La. Code Evid. art. 412 is to protect the victim and prevent prejudicial evidence of the victim's past sexual behavior from being admitted to imply a willingness on the victim's part to engage in the sexual acts that are the basis of the prosecution.  Second, the scope of the cross-examination which was disallowed in this case was extremely narrow, with little or no relevance to the aggravated rape charge Hernandez faced.  It is clear from the record that the alleged abuse which J.A. described to her mother after testifying in Hernandez's trial took place while Hernandez was already incarcerated.  Thus, those allegations were entirely separate and irrelevant to Hernandez's defense.

Furthermore, under the standard set forth in Brecht v. Abrahmson, it is clear that the excluded evidence did not have a "substantial and injurious effect or influence" on the verdict.  Even disregarding J.A.'s testimony, considering the testimony of K.A., L.P., and

J.W., the jury could easily have reached the same guilty verdict.  Thus, this minimal limitation on Hernandez's right to cross-examine J.A. did not constitute constitutional error. The state court's decision denying relief on this issue was neither contrary to nor an unreasonable application of federal law.  Hernandez is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Hernandez's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[37]

New Orleans, Louisiana, this _____23rd_____ day of January, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[37]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.